[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Richards Corporation (Richards), a subcontractor, brings this action against the defendant, SEMAC Electrical Contractors (Semac), the general contractor, in eight counts by way of its revised first amended complaint for work to be performed for the state of Connecticut's Department of Transportation (ConnDOT) on Project 173-245.
The terms of Semac's prime contract with ConnDot required that the subcontracts and the subcontractors be acceptable to ConnDot and receive its approval before working for the prime contractor. The Richards-Semac subcontract received this prior approval by ConnDot.
The subcontract required Richards to dig a trench along the highway Route I-95 from Milford to Branford, a distance of approximately seventeen miles. While the trench was open, Semac laid conduits for fiber optic cable after which Richards would backfill the trench. This work was to be carried out in conjunction with ConnDot's requirements concerning automobile traffic flows and safety procedures.
The work of trenching was anticipated to be carried out during the winter season. However, Richards was plagued by unusually cold temperatures. The ground became so hardfrozen that the trenching could not be accomplished. Further, heavy snowfalls CT Page 14884 caused delays until ConnDot cleared the snow from the highways. In addition, highway lane closures for plaintiffs equipment use was limited by the general contract.
As a result of these unforeseen weather-causing delays, Richards and Semac sought an extension of the contract completion date from ConnDot. It was not until May 4, 1994 that ConnDot responded to Richards' and Semacs' plea for an extension of time to complete the contract by granting a 75-day extension to Semac. Subsequently, ConnDot issued another change ordering that the work level previously accelerated, to be decelerated to approximately the previously existing level.
The plaintiffs complaint relates primarily to the additional costs and expenses it incurred as a result of the acceleration and deceleration orders issued to it through the defendant as the prime or general contractor.
Further, the plaintiff complains and alleges that the defendant and ConnDot settled their differences concerning the general contract by an additional payment over and above the sum set out in the general contract; that this additional sum included those costs and expenses incurred by the plaintiff in complying with ConnDot's acceleration and deceleration orders.
The subcontract between Semac and Richards incorporates those terms of Semac's general contract that affect the subcontractor; however, no direct contractual relationship existed between the subcontractor Richards and ConnDot.
Richards, as subcontractor, worked directly under Semac, the general contractor. All instructions came from Semac. Information, changes and orders from ConnDot that affected Richards would be given to Semac by ConnDot and passed by Semac to Richards.
The subcontract was executed January 21, 1994, with ConnDot's letter to proceed with work issued December 29, 1993. During January and February, 1994, weather conditions with unusually low temperatures and snow kept Richards from performing its work on the contract. The completion date of the contract was June 1, 1994, with a penalty assessment of liquidated damages applied after that date.
Despite complaints of severe weather conditions from both CT Page 14885 Semac and Richards, ConnDot refused to grant an extension of the completion date until May 4, 1994, when it granted a 75-day extension with an August 15, 1994, completion date. However, the following day, May 5, 1994, it ordered an acceleration of the job with a completion date of July 1, 1994. Subsequently, on June 12, 1994, ConnDot rescinded the acceleration order. In complying with the ConnDot acceleration decree, both Semac and Richards incurred substantial costs in modifying their work schedules, equipment requirements and the need to add additional men. About this time, both contractors, Semac and Richards, felt the need to have professional assistance in dealing with ConnDot regarding an extension of the time to complete the contract so that the application of the liquidated damages provision of the contract would be abated to correspond with the work delay caused by the adverse weather during January and February. In addition, both of the parties wanted to present a claim for the additional costs and expenses incurred by them in complying with ConnDot's acceleration of work order and subsequent cancellation of that order. To that end, the defendant, Semac, had contacted Peter Mazza, of The Mazza Consulting Group, to meet with Richards and Semac to represent them and present their claims to ConnDot. In May 1994, representatives of Semac and Richards met in Semac's offices with Peter Mazza where it was agreed that Mazza would represent them and that each would pay Mazza a fee, based upon what he accomplished in obtaining dollar benefits to each. Each was to provide Mazza supporting documents, papers and materials he would need to present the claims to ConnDot.
Mazza proceeded to prepare the claims to be presented to ConnDot. He requested various documents, materials, statements and records from each of the parties; i.e., Semac and Richards. These requested items were provided by the parties to Mazza. Mazza made several submissions to ConnDot of claims by both parties. These submissions were based upon the materials turned over to him by Semac and Richards. In all, Mazza presented four submissions to ConnDot. All were denied except the last one. This last submission was negotiated on January 19, 1996, between Semac, with Mazza representing it, and ConnDot, represented by Joanne Devine. During those negotiations, Ms. Devine made it clear to Semac and Mazza that the settlement, based upon the Mazza last submission, was a complete and final settlement of the claim by Semac, which, as general contractor, included the claim of the subcontractor, Richards. (TR 224).
In addition, Semac executed a release (Exh. 78) which CT Page 14886 included subcontractor claims against ConnDot.
That settlement between ConnDot and Semac was for the sum of four hundred fifty thousand dollars ($450,000.00), and was paid by ConnDot to Semac. None of the sum received by Semac was paid over to Richards.
The plaintiff, Richards, through this action, seeks to recover from Semac those costs and expenses it incurred resulting from ConnDot's acceleration order, and the constructive acceleration resulting from ConnDot's refusal to grant an extension of the completion date because of adverse weather conditions during January and February 1994. Semac received the full settlement amount of $450,000 and paid nothing to Richards contending that nothing was due to Richards. The basis for this contention is that Richards' subcontract included relevant terms of Semac's general contract with ConnDot. One of those terms granted ConnDot the right to audit Richards' subcontract accounts; that Richards refused to permit ConnDot's accountants, Seward and Monde, access to those accounts; therefore, nothing was due to Richards because of this breach of the contract.
Richards denies that it refused access to its accounts. It contends that when access was requested by Seward and Monde, its books and accounts were not in a condition to be audited; that it lacked the money to hire outside accountants to come in and put the accounts in order; further, that no further request was made to it by the ConnDot's auditors to examine its accounts. Thus, no breach of those terms of the contract occurred. Further, Richards points out that Semac and ConnDot settled the claims made by Semac and Richards without the need for an audit of Richards' accounts.
The difficulties leading to the instant complaint arose from several sources. The contractual arrangement between ConnDot and Semac restricted contact by the subcontractor, Richards, to Semac. On the other hand, ConnDot could and did supervise and evaluate Richards' work directly without the intervention of Semac. Thus, Richards' contact with ConnDot was through Semac whereas ConnDot had direct control of Richards' work site.
The parties, Semac and Richards, in arranging to have Mazza present their claims to ConnDot, was on the basis that each had a separate claim; that Mazza would present these separate claims to ConnDot; that ConnDot would judge and evaluate these separate CT Page 14887 claims and inform Mazza of its determination.
However, ConnDot's position was that it had one claim presented to it; i.e., Semac's claim as general contractor, which included Richards' subcontract claim; that its decision was based on Semac's general contractor's claim and its (ConnDot's) liability on that contract was to the general contractor, Semac, alone. All subcontractor's claims were between the subcontractor and the general contractor without involvement by ConnDot.
Although Mazza ostensibly represented both Semac and Richards in the claims submissions to ConnDot, it was with Semac that he was in contact regarding the submissions he made. He also gave copies of these submissions to Semac. Richards was not informed of the contents of these submissions and would receive copies only after it indirectly found out about the submission and requested a copy of Mazza. Richards was not informed of hearings on the submissions nor invited to them; whereas, Semac knew of them and participated in them.
Richards lost confidence in Mazza' s representation of its interest and engaged legal counsel to represent its interest.
The court determines that there was a general contract between ConnDot and Semac; that Semac subcontracted certain portions of that general contract to the Richards' Corporation. ConnDot accepted and approved that subcontract. In carrying out the terms of that subcontract, Richards incurred costs and expenses not contemplated in the general contract nor in the subcontract. As a result of these unanticipated costs and expenses, Richards, in conjunction with Semac, engaged the services of Mazza Consulting Group to present its claims for acceptance to and payment by ConnDot. Those Richards' claims, together with claims by Semac, were submitted to ConnDot by Mazza. At a session with ConnDot, in at attempt to settle these claims, Mazza appeared together with Semac's president, Michael Solimene, Sr. No representative from Richards was present; nor was Richards advised of the meeting or of its purpose. However, this meeting was in accordance with ConnDot's policy of dealing only with the prime contractor in negotiating settlement of claims including all claims of the prime contractor and subcontractors.
A settlement of all these claims was reached between ConnDot and Semac in the sum of $450,000.00, and payment was made in CT Page 14888 this amount to Semac.
ConnDot, through its negotiator, Joann Devine, stressed at the conclusion of the negotiations to Semac's president, Michael Solimene, Sr., that the settlement reached was for all claims by Semac and its subcontractors. In addition, ConnDot received a release from Semac for all claims by Semac and its subcontractors. Semac had full knowledge of the purpose and implications of the terms and purpose of the settlement it reached with ConnDot, as well as the purpose of the release it executed at that time.
Thus, Semac knew that any liability under the general contract by ConnDot to Richards as a subcontractor was extinguished; and it was Semac's responsibility alone to Richards to resolve its claims.
That, Semac accepted Mazza's statement, made prior to the above-mentioned negotiating sessions; that, since ConnDot's contract provided for access for its auditors to certify contractors' accounts; that, Richards failed to provide such access when requested by Seward and Monde; therefore, the effect was to close out Richards' claim.
That, Semac knew that ConnDot did not make that statement, nor did it indicate that Richards' claims were not being considered in the settlement negotiations and were not a part of the settlement.
That, Semac's responsibility to Richards by way of the subcontract was not limited by or to a specific payment by ConnDot to Semac; nor were any such payments so earmarked by ConnDot.
Thus, as between Semac and Richards, payments due and owing to Richards by Semac are governed by their contract; i.e., the above-mentioned subcontract.
By way of that contract, Richards performed certain services and provided certain materials. Those services and materials provided were to be subject to valuations by ConnDot. It had a policy of engaging outside auditors for independent valuation, as well as using its own staff. In the present case, ConnDot negotiated a settlement based upon its staff valuation using available documents and records of its employees as well as those CT Page 14889 provided by Semac and Richards. Based upon these records and the negotiations, a settlement sum of $450,000.00 was reached. There is no indication that had Richards complied with the request by Seward and Monde to review its records that a substantially different negotiated settlement would have been reached.
Therefore, any claim that Richards has as to work performed on ConnDot Project #173-245 relates to its subcontract with Semac. By way of that subcontract, Semac had the sole responsibility to Richards for valid claims Richards presented.
The court in evaluating the claims presented by Richards at this trial proceeds on the basis that the negotiated settlement reached by ConnDot and Semac was fair and reasonable; that, this settlement included all claims made by Semac and Richards. The court notes that both Semac and Richards had presented to Mazza documentation and/or estimates to support the claims Mazza presented to ConnDot at the settlement negotiations.
Submission TV, developed by Peter Mazza from documents and materials presented to him by Semac and Richards, was used as the basis for the claims of both Semac and Richards in the negotiated settlement with ConnDot. Mazza was the authorized representative of both parties in these negotiations. The claims of the parties set out in the submission, Plaintiff's Exhibit 56, internal exhibit #3b, are:
 Semac's claim: $ 924,625.00 = 66% Richard's claim: 471.628.00 = 34%
$1,396,253.00 = 100%
Each party's percentage of the total claim is set out alongside the individual claim.
Therefore, with a total negotiated settlement value of the claims amounting to $450,000.00, each party's percentage share amounts to:
 Semac: $450,000.00 x .66 = $297,000.00 Richards: $450,000.00 x .34 = $153,000.00
Therefore, the court finds that by way of Count One of the amended complaint, the plaintiff, Richards Corporation, is due and owing the sum of $153,000.00 from the defendant, Semac Electrical Corporation. CT Page 14890
In reaching this conclusion, the court determined that the parties had contracts which set out the terms and conditions they were to abide by. The subcontract between these parties incorporated the applicable terms and conditions of the prime contract into the subcontract. The prime contract set out the relationship as between ConnDot and the prime contractor, Semac. Thus, Richards' relationship with ConnDot was only through Semac. Therefore, Semac could and did appropriately negotiate the claims of the parties with ConnDot. Semac's allegation that it was negotiating only its claim with ConnDot was not borne out by the evidence, nor by the terms of the prime contract. Further, its allegation that ConnDot refused to consider Richards' claim because of the lack of an audit of Richards' records by ConnDot's auditors was specifically and directly denied by ConnDot's representative at those negotiations, Joanne Devine.
Although Richards contends that its damages were to be determined by its costs and expenses as presented to the court, the court is of the opinion that Richards did in fact present all those claims through its authorized representative, Mazza Consulting Group, and that these were considered by both parties, ConnDot and Semac, in reaching the negotiated settlement.
With regard to Count Two of plaintiff's amended complaint based upon implied contract, the court notes that the allegations are redundant of the first count. Since the court has decided Count One, Count Two is not material, and the court does not rule on this count.
Count Three is based upon quantum meruit. The court's ruling in Count One that the parties' subcontract was breached involves the same allegations set out in Count Three and has been determined by the court in its rulings in Count One.
Count Five: The court finds for the defendant. The plaintiff failed to present sufficient evidence that the defendant's business dealings, conduct and actions constituted unfair and deceptive acts and/or trade practices, which were violative of Gen. Stat. §§ 2-110a, et seq.
Count Six: The court finds for the defendant on this count. The plaintiff failed to present sufficient evidence that the defendant's conduct or actions breached covenants of good faith and fair dealing. CT Page 14891
Count Seven: The court finds for the defendant on this count.
The court finds that the parties herein had a contractual relationship wherein the defendant was to compensate the plaintiff for work and materials provided for the defendant's benefit towards a contract between the defendant and ConnDot. The defendant had a self-interest in presenting to ConnDot the work performed by the plaintiff since it was part of the defendant's contract with ConnDot for which the defendant was to receive payment. This was not payment that was being made by ConnDot for the plaintiff's benefit but rather payment to the defendant under its contract with ConnDot. Any payment due to the plaintiff under its subcontract with the defendant was to be made in accordance with the terms of that subcontract and not the terms of the general contract. Thus, there was no fiduciary duty owed to the plaintiff by the defendant in its dealings with ConnDot.
With regard to Counts Two, Four and Eight — These three counts were withdrawn from the complaint by the plaintiff and require no action by the court.
Therefore, judgment may enter for the plaintiff, Richards Corporation, on Count One, in the sum of $153,000.00, together with court costs, and against the defendant, Semac Electrical Contractors. Further, judgment is to enter for the defendant on Counts Five, Six and Seven.
Kremski, Judge Trial Referee